# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, and KYKO GLOBAL GmbH, a Bahamian corporation, | Case No.  2:17-cv-212-DSC |
| Plaintiffs, | |
| v. | |
| OMKAR BHONGIR, an individual. | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

AND NOW, comes Plaintiffs, Kyko Global, Inc. and Kyko Global GmbH (collectively "Kyko"), by and through their undersigned attorneys, with their Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint (the "Motion") as follows:

## STATEMENT OF FACTS

In 2011, Kyko entered into a loan factoring agreement with Prithvi Information Solutions Ltd ("Prithvi").  To induce Kyko to enter into the loan factoring agreement, Prithvi supplied Kyko with accounts receivable.  Kyko entered into the loan factoring agreement and failed to receive the required payments. Kyko subsequently discovered that the accounts receivable were fraudulent and listed non-existing customers.  In 2013, Kyko filed a lawsuit against Prithvi and others in the United States District Court for the Western District of Washington ("Washington Lawsuit") with respect to the bogus accounts receivable and Kyko's failure to receive payment under the loan factoring agreement.

Once Prithvi realized its fraud was exposed, its executives destroyed evidence, refused to abide by court orders leading to an arrest warrant, invoked the 5th Amendment right against self-

incrimination, fled to India to hide from the FBI to try to avoid likely federal criminal prosecution, and allowed a trial *in absentia* to occur to avoid providing factual details regarding the fraud. In the end, the discovery process yielded incomplete and cryptic information regarding the reach and extent of Prithvi's fraud and those who participated in it.

From what information remained, in March of 2015, Kyko learned that Omkar Bhongir ("Mr. Bhongir") was a member of Prithvi's audit and remuneration committees from 2005-2009 who was involved with the bogus accounts receivable. Kyko subsequently filed its Complaint against Mr. Bhongir in this case in February, 2017 alleging fraud and negligence claims.

Defendant's Motion to Dismiss argues that this Court lacks personal jurisdiction, that venue is improper, and that Kyko's claims are barred by the statute of limitations. When boiled down, Mr. Bhongir's position is simply this: Because he walked away from Prithvi in 2009 prior to Kyko entering in the loan factoring agreement with Prithvi in 2011, he has no liability. For the reasons set forth below, this position fails as a matter of law.

## ARGUMENT

**A.      Kyko Has Presented Sufficient Factual Allegations That Entitle Kyko to Conduct Jurisdictional Discovery Prior to This Court's Ruling Regarding Defendant's Motion to Dismiss Under Rule 12(b)(2)**

### 1.      Standard of Review

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over nonresidents to the extent allowed under the law of the state where the court sits." Gentex Corp. v. Abbot, 978 F.Supp.2d 391, 395 (E.D. Pa. 2013)(citations omitted).

Plaintiff's Complaint asserts that this Court has jurisdiction over Mr. Bhongir pursuant to 42 Pa. C.S.A. § 5322. (Complaint ¶ 9). 42 Pa. C.S.A. § 5322(a) states in pertinent part:

(a) General rule.--A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to

jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
...

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
...
(3) Causing harm or tortious injury by an act or omission in this Commonwealth.
(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.
...
(7) Accepting election or appointment or exercising powers under the authority of this Commonwealth as a:
(i) Personal representative of a decedent.
(ii) Guardian of a minor or incapacitated person.
(iii) Trustee or other fiduciary.
(iv) Director or officer of a corporation.

## 42 Pa. C.S.A. § 5322(b) states:

In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

## 42 Pa. C.S.A. § 5322(c) states:

When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

## <u>Gentex</u> summarizes a district court's personal jurisdiction inquiry as follows:

Absent [general jurisdiction],[1] a court may exercise jurisdiction only if specific personal jurisdiction exists. *Mellon Bank*, <u>960 F.2d at 1221.</u> This inquiry focuses on the relationship among the' defendant, the forum, and the present litigation. *Pinker v. Roche Holdings, Ltd.,* <u>292 F.3d 361, 368 (3d Cir.2002).</u> The plaintiff's claim(s) must relate to or arise out of the defendant's contacts with the forum. *Mellon Bank,* <u>960 F.2d at 1221.</u> Such contacts must be constitutionally sufficient so as to comport with the due process clause of the Fifth Amendment and with "traditional notions

---

[1] At this time, Kyko does not possess sufficient facts that enable them to allege that this Court has general personal jurisdiction over Bhongir.  However, Kyko reserves the right to amend its Complaint to assert general personal jurisdiction exists over Bhongir to the extent this Court grants Kyko's request to conduct jurisdictional discovery and obtains facts that would support the allegation.

of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citing *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1941)); *see also* *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Pinker,* 292 F.3d at 368–69. Contacts that are merely "random, isolated or fortuitous" are not sufficient to confer jurisdiction. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Further, "a corporate officer's contacts in his corporate capacity may be factored into the personal jurisdiction analysis when the officer is sued in his individual capacity." *Beistle Co. v. Party U.S.A., Inc.,* 914 F.Supp. 92, 95 (M.D.Pa.1996) (Caldwell, J.) (citing *Donner v. Tams–Witmark Music Library, Inc.,* 480 F.Supp. 1229 (E.D.Pa.1979)).

The Third Circuit applies a three-part test to determine whether specific personal jurisdiction exists. *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir.2007). First, the defendant must have "purposefully directed its activities" at the forum state. *Id.*(quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). Second, the litigation must "arise out of or relate to" at least one of those activities. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotations omitted)). Third, if the first two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.' " *Id.* (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174).

Gentex 978 F.Supp.2d at 396

"It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys "R" Us Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3rd Cir. 2003)(emphasis added). The Court further stated:

Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, *Pinker,* 292 F.3d at 368, courts are to assist the plaintiff by **allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous."** *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiff's right to conduct jurisdictional discovery should be sustained.

**Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction**. *See, e.g.,* *In re Automotive Refinishing Paint Antitrust Litigation,* 2002 WL 31261330, at *9 (E.D.Pa. July 31, 2002) (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a "threshold prima facie showing of personal jurisdiction over Defendants"); *W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al.,* 968 F.Supp. 996, 1001 (D.N.J.1997) (denying defendant's motion to dismiss where the plaintiffs' "request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant."); *Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc.,* 1989 WL 136277, at *1 (E.D.Pa. Nov.8,

1989) (holding   motion   to   dismiss   in   abeyance   to   permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts).

Toys "R" Us 318 F.3d at 456 (emphasis added)

As further stated in Oticon Inc. v. Sebotek Hearing Systems LLC, 865 F.Supp.2d 501,

507 (D. N.J. 2011):

> Where no jurisdictional discovery has been taken, the court must accept the plaintiff's complaint's allegations as true and resolve all factual disputes in the plaintiff's favor in ruling on the motion to dismiss. *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed.Cir.2003). However, once the plaintiff has been granted discovery, the plaintiff "cannot rely on the allegations of its complaint." *The Russian Am. Spirits Co. v. Heublein, Inc.,* 936 F.Supp. 177, 192 (D.Del.1996) (citing *Stranahan Gear Co. v. NL Indus. Inc.,* 800 F.2d 53, 58 (3d Cir.1986)). Rather, Plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984)). In essence, plaintiff must point to evidence of specific facts in the record in support of its contention that jurisdiction exists. *Id.* With such a supplemented record before it, a district court is then empowered to "determine whether it has personal jurisdiction" once "the record is complete...." *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.,* 395 F.3d 1275, 1283 (Fed.Cir.2005)

## 2.   The Complaint Establishes Kyko's Right to Conduct Jurisdictional Discovery

Kyko hereby incorporates the facts and arguments contained in its Opposition to Defendant's Stay Motion [Doc. No. 17] and further states as follows.[2]

The Complaint, which this Court must accept as true when initially reviewing a 12(b)(2) motion, states that Prithvi is an Indian corporation registered to do business in Pittsburgh, Pennsylvania. (Complaint ¶ 3).  Mr. Bhongir was formerly a director of Prithvi and member of its audit committee and remuneration committee. (Complaint ¶ 4).  Mr. Bhongir acted fraudulently, or negligently, with respect to the creation of bogus accounts receivable that were used to induce lenders such as Kyko to enter into loan agreements.  (Complaint ¶ 33-47).  Mr.

---

[2] As discussed in detail later in this Brief, the acts of criminals resulted in the intentional destruction of evidence related to the scope of the fraud perpetrated against Kyko and those who were involved in it.  Bhongir tries to seize on this by trying to prevent Kyko from having the opportunity to do any discovery as evidenced by this Motion to Dismiss, Stay Motion, his Motion for Leave to File a Reply Brief in Support of the Stay Motion, and the Motion to Strike Kiran Kulkarni's Declaration. Further, notwithstanding Bhongir's counsel's statements to the contrary, Bhongir reneged on his agreement to provide Kyko with his Rule 26(a)(1) initial disclosures on or before May 9, 2017.  In short, Bhongir has "pulled out all the stops" to try to keep Kyko and this Court in the dark under the guise of trying to avoid the costs associated with the discovery process.

Bhongir conducted these activities while physically located in Pittsburgh, Pennsylvania or performed these activities outside Pittsburgh, Pennsylvania but directed his activities to Pittsburgh, Pennsylvania. (Complaint ¶ 5-6).  Accordingly, Kyko's Complaint demonstrates that Mr. Bhongir committed fraudulent and negligent activities in Pittsburgh and/or directed his activities to Pittsburgh.

Given the foregoing, Kyko is entitled to conduct jurisdictional discovery.

### 3. The Parties' Declarations Further Establish Kyko's Right to Conduct Jurisdictional Discovery

In Mr. Bhongir's declaration, he admits that he was formally a board member and director of Prithvi. (Bhongir Dec. ¶ 6, 8).  However, similar to his correspondence discussed in Kyko's Opposition to the Stay Motion, Mr. Bhongir tries to distance himself from having any role regarding the bogus accounts receivable by stating that he was not a member of the audit committee. (Bhongir Dec. ¶ 11-13).   However, Kiran Kulkarni's declaration (**Exhibit A,** reattached from Kyko's Opposition to the Stay Motion) contradicts Mr. Bhongir's declaration and states that Mr. Bhongir was a member of Prithvi's audit committee. (Kulkarni Dec. ¶ 4).

Mr. Bhongir then tries to skirt around the fact that Prithvi's United States' operations were executed, monitored, and controlled from Pittsburgh (Kulkarni Dec. ¶ 5) by stating that he would attend board meetings via telephone "which were held in India." (Bhongir Dec. ¶ 14).  Although Prithvi's employees from India may have been on these phone calls, the locus was Pittsburgh where U.S. operational decisions were made (Kulkarni Dec. ¶ 9).

Mr. Bhongir used "omkar@prithvisolutions.com" and "omkar.bhongir@prithvisolutions.com" to conduct business on behalf of Prithvi. (Kulkarni Dec. ¶ 8). It defies comprehension how Mr. Bhongir could not have sent numerous emails from

California to Pittsburgh to execute his duties.  Indeed, it appears that Mr. Bhongir did just that. (Kulkarni Dec. ¶ 9).

In addition to trying to downplay his electronic contacts in Pittsburgh, Mr. Bhongir also tries to downplay his physical contacts in Pittsburgh.  Although Mr. Bhongir denies participating in a board meeting in Pittsburgh (Bhongir Dec. ¶ 15, 19), he admits that he traveled to Pittsburgh for "a couple of days" and "visit[ed] Prithvi's office in Pittsburgh briefly to meet with company personnel who worked out of the Pittsburgh office at the time." (Bhongir Dec. ¶ 20).  Consistent with this statement, Mr. Kulkarni opines that it appears that Mr. Bhongir physically appeared in Pittsburgh to perform his job duties.  (Kulkarni Dec. ¶ 9).

Finally, Mr. Bhongir tries to distance himself from Prithvi's Pittsburgh operations by stating that he "did not obtain any shares of Prithvi through the company or outside through any open market." (Bhongir Dec. ¶ 17).  Although it is possible that he did not obtain shares, records show that he was paid INR 300,000 for his services as Prithvi's director and member of the audit committee and remuneration committee (Kulkarni Dec. ¶ 6) and was paid $11,800 USD for attendance of Prithvi strategy and board meetings in the United States.  (Kulkarni Dec. ¶ 7).

Given the foregoing, Kyko is entitled to conduct jurisdictional discovery.

### 4.    This Court Should Not Rule on Defendant's Motion Until After Jurisdictional Discovery Has Been Completed

As set forth above, Kyko has established that its personal jurisdiction allegations are not "clearly frivolous" and has otherwise established "with reasonable particularity the *possible existence* of the requisite contacts" under 42 Pa. C.S.A. § 5322(a)(1), (3), (4), (7) to establish personal jurisdiction. Quoting Toys "R" Us 318 F.3d at 457 (emphasis added).  Accordingly, Kyko has established its "right" to conduct jurisdictional discovery.  This is especially the case

where, as here, "[i]nformation, known only to [Mr. Bhongir], would speak to an essential element of the personal jurisdiction calculus." Id.

Because Kyko has demonstrated its legal right to conduct jurisdictional discovery as discussed above, it is not possible for this Court to rule upon Defendant's Rule 12(b)(2) motion until jurisdictional discovery is complete.  As set forth in O'Connor v. Sandy Lane Hotel Co. Ltd., 496 F.3d 312, 317 (3rd Cir. 2007), this Court must utilize a three-part test to determine whether personal jurisdiction exists.   The Court must first determine that Mr. Bhongir "purposefully directed [his] activities" to Pennsylvania.  Second, Kyko's Complaint must "arise out of or relate to" at least one of those activities.  Third, if the first two requirements are met, the Court must determine whether the exercise of jurisdiction "comports with fair play and substantial justice." Given the Complaint and the parties' declarations establish that Kyko has a right to conduct jurisdictional discovery, it is not possible for this Court to implement the three-part test until after discovery has been completed.  Therefore, this Court should not rule on Mr. Defendant's Rule 12(b)(2) motion until sometime after jurisdictional discovery is completed.

Moreover, it appears Mr. Bhongir attempts to hide behind the "fiduciary shield doctrine" to try to escape this Court's jurisdiction.  (Bhongir Brf. Pgs. 11-12).   In National Precast Crypto Co. v. Dy-Core Pennsylvania Inc., 785 F.Supp. 1186, 1191 (W.D. Pa. 1992) the court stated the following regarding the fiduciary shield doctrine and its exception in pertinent part:

> As a general rule, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. at 357. This rule is commonly referred to as the fiduciary shield doctrine.
> ...
> Courts will ignore the fiduciary shield rule in two circumstances, both of which have their roots in substantive legal theories that ignore the general corporate law rule of limited liability. First, a corporate agent may be held personally liable for torts committed in the corporate capacity**.** *See Donsco, Inc. v. Casper Corp.,* 587 F.2d 602 (3d Cir.1978). Accordingly, if the corporate officer engages in tortious conduct in his/her corporate capacity in the forum, courts will consider this conduct as contact with the forum sufficient to support a finding of personal jurisdiction over the officer in his/her individual capacity. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7 (1st Cir.1990); *Western Contracting Corp. v. Bechtel Corp.,* 885 F.2d

1196; *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa.1991); *Donner v. Tams–Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1234 (E.D.Pa.1979).
...

"[In] [u]sing a case-by-case approach to determine whether corporate contacts should be considered for personal jurisdiction over an officer, [courts] analyze the following factors: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the extent and nature of the officer's participation in the alleged tortious conduct." McMullen v. European Adoption Consultants Inc., 129 F.Supp.2d 805, 812 (W.D. Pa. 2001).

Regarding factor (1), the parties have presented conflicting evidence regarding whether Mr. Bhongir was a member of the audit committee with oversight regarding the bogus receivables. Regarding factor (2), Kyko is entitled to conduct jurisdictional discovery for the reasons set forth above. Regarding factor (3), This issue goes to the heart of the parties' dispute and cannot be decided pre-discovery in the context of a Rule 12(b)(2), Rule 12(b)(3), and Rule 12(b)(6) motion.

For the reasons set forth above, this Court should deny Defendant's Rule 12(b)(2) motion and permit Kyko to conduct jurisdictional discovery prior to making any ruling regarding the Court's jurisdiction over Mr. Bhongir.

## B. This Court Should Deny Defendant's Request to Dismiss Pursuant to Rule 12(b)(3) Regarding Improper Venue

The standard of review under a Rule 12(b)(3) motion is essentially identical to a Rule 12(b)(2) motion. As set forth in Bancroft Life & Casualty v. Lo, 2013 WL 364239, No. 12-cv-1431, at *1 (W.D. Pa. 2013):

When deciding whether a Motion to Dismiss brought pursuant to Rule 12(b)(3) should be granted, the United States Court of Appeals for the Third Circuit has held:

We accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits. *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir.1998) ("Plaintiff contends that in responding to a motion to dismiss for improper venue, he was entitled to rely upon the well pled facts of his complaint. This is true, however, only to the extent that such facts are uncontroverted by defendant's affidavit."); see 5B *Charles Alan Wright*

*& Arthur R. Miller, Federal Practice and Procedure* § 1352, at 324 (3d ed. 2004) ("Practice on a motion under Rule 12(b)(3) is relatively straight-forward. All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.") (internal footnotes omitted).

*Bockman v. First American Marketing Corp.,* 459 Fed.Appx. 157, 158, n. 1 (3d Cir.2012).

28 USC § 1391(b) states:

(b) Venue in general**.**--A civil action may be brought in--
(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendant's request for dismissal under Rule 12(b)(3) fails for essentially the same reasons as his request for dismissal under Rule 12(b)(2). Kyko's Complaint and the parties' declarations demonstrate that there is conflicting evidence regarding Mr. Bhongir's role at Prithvi, Mr. Bhongir's contacts with Pittsburgh, and the extent that Mr. Bhongir was involved with the bogus accounts receivable. In short, like his Rule 12(b)(2) motion, the Court cannot rule on Defendant's request for dismissal under Rule 12(b)(3) because Kyko has established its right to conduct jurisdictional discovery, which is necessarily intertwined with determining venue, prior to this Court making any determination regarding personal jurisdiction. Accordingly, Defendant's Rule 12(b)(3) motion should be denied.

Proceeding from the faulty premise that venue is improper, Mr. Bhongir then makes the grandiose statement that the Complaint must be dismissed and cannot be transferred under 28 USC § 1406(a) because "[t]he claims would be time-barred *in any jurisdiction* and they cannot allege the necessary elements of their claims." (Bhongir Brf. Pg. 14)(emphasis added). As set forth in detail later in this Brief, Kyko's claims are timely. Nevertheless, the grandiose statement appears grounded under 42 Pa. C.S.A. § 5521(b) - which requires Pennsylvania courts to apply the shorter of statute of limitations periods between Pennsylvania and another forum (Bhongir

Brf. Pgs. 14-15) - and cherry-picked California case law regarding a version of the statute of limitations tolling doctrine (Bhongir Brf. Pg. 17 n.3).

Mr. Bhongir's argument under 42 Pa. C.S.A. § 5521(b) fails because, at a minimum, Kyko's claims could be timely *if another state's substantive law and statutory and common law tolling doctrines were applied*. To the extent this Court entertains Defendant's request for dismissal under 28 USC § 1406(a) at this time, Kyko is entitled to amend its Complaint to assert additional claims arising under California law and should be provided an opportunity to brief same before the Court issues a ruling. See <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors Inc.</u>, 482 F.3d 247, 252 (3rd Cir. 2007)(citation omitted)("In *Kelly* we set out how district courts should deal with motions to dismiss filed in lieu of answers in ordinary civil litigation. We held that a motion to dismiss is not a responsive pleading and that Rule 15(a), therefore, allows one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and enters final judgment"). Kyko would suffer extreme prejudice by having its claims barred in any jurisdiction, and in particular California, without even having the opportunity to plead those claims and having the opportunity to provide argument to demonstrate why they are timely. Accordingly, Defendant's request for dismissal under 28 USC § 1406(a) should be denied.

**C.    The Statute of Limitations Does Not Bar Kyko's Claims**

**1.    Standard of Review**

<u>Connelly v. Lane Construction Corp.</u>, 809 F.3d 780, 786 (3rd Cir. 2016) states the following as the standard of review regarding a Rule 12(b)(6) motion:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, <u>550 U.S. at 555, 127 S.Ct. 1955</u> (quoting *Conley v. Gibson*, <u>355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80</u>

<u>(1957)</u>). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face." *Iqbal,* <u>556 U.S. at 678, 129 S.Ct. 1937</u> (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Sheridan v. NGK Metals Corp.,* <u>609 F.3d 239, 262 n. 27 (3d Cir.2010)</u>. Although the plausibility standard "does not impose a probability requirement," *Twombly,* <u>550 U.S. at 556, 127 S.Ct. 1955</u>, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal,* <u>556 U.S. at 678, 129 S.Ct. 1937</u>. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its **\*787** judicial experience and common sense." *Id.* <u>at 679, 129 S.Ct. 1937</u>.

(emphasis added)

"It remains an acceptable statement of the standard [after *Twombly*], for example, that courts "**accept all factual allegations as true**, construe the complaint in the light most favorable to the plaintiff, and determine whether, **under any reasonable reading of the complaint**, the plaintiff **may** be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3rd Cir. 2008)(emphasis added).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." <u>Pension Benefit Guaranty Corp. v. White Consolidated Industries Inc.</u>, 998 F.2d 1192, 1196 (3rd. Cir. 1993). Other than exhibits attached to the complaint and matters of public record, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion **must** be treated as one for summary judgment under Rule 56. All parties **must** be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d)(emphasis added).

### 2.    Mr. Bhongir's Declaration Must Be Disregarded As a Matter of Law

While offered to try to establish that this Court does not have personal jurisdiction over him to support his Rule 12(b)(2) motion, the declaration also slips-in assertions that try to rebut the allegations contained in the Complaint. For example, and without limitation, the Complaint

states that, from 2005-2009, Mr. Bhongir was a director and member of Prithvi's audit committee and remuneration committee who had knowledge of Prithvi's customers and accounts receivable. (Complaint ¶ 15). In response, Mr. Bhongir denies he was on the audit committee in an attempt to try to distance himself from having knowledge of the bogus accounts receivable (Bhongir Dec. ¶ 11 - 13). Mr. Bhongir's declaration was generated to support his Motion to Dismiss, and therefore, it is not a "matter[] of public record" under Pension Benefit Guaranty 998 F.2d at 1196. Accordingly, it must be disregarded with respect to his Rule 12(b)(6) motion as a matter of law.

However, if the Court nevertheless considers Mr. Bhongir's declaration, then Rule 12(d) requires this Court to treat the motion as one for summary judgment under Rule 56 and Kyko "must be given a reasonable opportunity to present all the material that is pertinent to the motion." As discussed above, the parties have presented conflicting evidence regarding Mr. Bhongir's role at PISL and his involvement with the bogus accounts receivable. Accordingly, Kyko should be afforded an opportunity to challenge the assertions made in Mr. Bhongir's declaration and otherwise be provided the opportunity to engage in the standard discovery process before this Court rules within the context of a Rule 56 motion. See Doe v. Abington Friends School, 80 F.3d 252, 257 (3rd. Cir. 2007)(citation omitted)("[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.' ... This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record").

### 3. Pennsylvania's Statutory Tolling and Common Law Doctrines Demonstrate Kyko's Claims Are Timely

The statute of limitations for fraud and negligence claims is two years. 42 Pa.C.S.A. § 5524. Mr. Bhongir committed his tortious acts with respect to the bogus accounts receivable

ending in 2009.[3] In 2011, Prithvi transmitted these bogus accounts receivable to Kyko who relied upon them to enter into the loan factoring agreement. In March of 2013, Kyko discovered that the accounts receivable were bogus and filed the Washington Lawsuit. During the course of the Washington Lawsuit, Kyko did the best it could to piece together the remnants left over from Prithvi's executives' destruction/concealment of evidence (discuss further below) and learned of Mr. Bhongir's involvement with the bogus accounts receivable in March of 2015. Kyko filed its Complaint in this case in February 2017. Accordingly, unless the statute of limitations is tolled, Plaintiff's claims are time-barred.

42 Pa.C.S.A. § 5532 states in pertinent part:

(a) General rule.--**If, when a cause of action accrues against a person**, **he is** **without this** **Commonwealth**, the time within which the action or proceeding must be commenced shall be computed **from the time he comes into or returns to this Commonwealth**. **If, after a cause of** **action has accrued against a person,** he departs from this Commonwealth **and remains** **continuously absent therefrom for four months or more**, or he resides within this Commonwealth under a false name which is unknown to the person entitled to commence the action or proceeding, **the time of his absence** or residence within this Commonwealth under such a false name **is not a part of the time within which the action or proceeding must be** **commenced**.

(b) Exception.--Subsection (a) does not apply in any of the following cases:
(1) While there is in force a designation, voluntary or involuntary, made pursuant to law, of a person to whom process may be delivered within this Commonwealth with the same effect as if served personally within this Commonwealth.
(2) While a foreign corporation has one or more officers or other persons in this Commonwealth on whom process against such corporation may be served.
**(3) While jurisdiction over the person of the defendant can be obtained without personal** **delivery of process to him within this Commonwealth**.
...

(emphasis added)

As set forth in Sections A and B of this Brief, Kyko's Complaint and the parties' declarations demonstrate that there is conflicting evidence regarding Mr. Bhongir's contacts with Pittsburgh. The amount, manner (whether in-state or out-of-state), and timing of these contacts directly affects the tolling of the statute of limitations period under 42 Pa.C.S.A. § 5532.

---

[3] As set forth above, in the context of a Rule 12(b)(6) motion, this Court is required to accept Plaintiff's allegations as true.

Nevertheless, taking Kyko's version of facts as true, Mr. Bhongir's last contact with Pittsburgh was in 2009 and he has had no contact ever since because he resides and works in California (Bhongir Brf. Pg. 1). Accordingly, 42 Pa.C.S.A. § 5532 tolls the statute of limitations period for a total of two years- the period from March of 2013 when Kyko discovered the accounts receivable were fraudulent to March of 2015 when Kyko discovered Mr. Bhongir's involvement with the bogus accounts receivable. Therefore, Kyko had until March of 2017 to file its Complaint (two years statute of limitations period plus two years that are tolled). Kyko filed its Complaint in February, 2017. Consequently, Kyko's claims are timely.

### a.    The Cover Up

Mr. Bhongir completely ignores 42 Pa.C.S.A. § 5532 because it is fatal to his motion and tries to rely upon the common law discovery rule doctrine that states, in part, the limitations period is not necessarily tolled due to a plaintiff's failure to identify the defendant within the limitations period. (Bhongir Brf. Pgs. 16-18). In making this argument, Mr. Bhongir conveniently fails to inform this Court that Prithvi executives engaged in a concerted effort to destroy evidence and fraudulently conceal the details of the fraud and those who participated in it. Accordingly, as discussed below, Kyko's claims are tolled both under 42 Pa.C.S.A. § 5532 and the common law even though Kyko discovered Mr. Bhongir's involvement in the fraud two years after Kyko discovered the accounts receivable were bogus.

42 Pa.C.S.A. § 5532(b)(3) states that the statutory tolling doctrine does not apply when a defendant is otherwise capable of being located and served with a complaint. In evaluating whether Section (b)(3) applies, the court is required to "look at the efforts made by the plaintiff to locate the defendant from the *plaintiff's perspective.*" Johnson v. Stuenzi, 696 A.2d 237, 242 (Pa. Super. Ct. 1997)(emphasis included). This does not entail a "Herculean search effort, the

hiring of Sherlock Holmes or putting the FBI on the defendant's trail. It means requiring a plaintiff to take *normal steps* that are *reasonably calculated* to locate a defendant." Id. at 242 (emphasis added). Johnson further states:

> If it is concluded that the plaintiff(s) made a **reasonably diligent effort** to find the defendant yet the defendant was not located, then the limitations period will be tolled for the period of time which the defendant was out of state and not located. **If it is concluded that the plaintiff's efforts fell short of reasonable diligence, the period of absence will still be tolled** if it is concluded that it is more likely than not that a reasonably diligent effort would have failed to result in the finding and successful serving of the defendant within a total countable time equal to the limitations period

> Johnson  696 A.2d at 243 (emphasis added)

Realizing that they have no *facts* that demonstrate how Kyko was not "reasonably diligent" in its search efforts, let alone if Kyko "fell short of reasonable diligence ... it is more likely than not that a reasonably diligent effort would have [located Mr. Bhongir]," Mr. Bhongir wants this Court to bite on his hollow "feel-good" language devoid of any evidentiary support: "As soon as Plaintiffs identified the injury and its cause, they were under a duty to investigate the injury and determine all relevant tortfeasors. *Plaintiffs had the benefit of discovery in the other lawsuit* and even identified Mr. Bhongir (as evidenced by their CEO's communications and threatening letters from their attorneys) within the statutory period.[4] (Bhongir's Brf. Pg. 18)(emphasis added).

The reality: the discovery process in the Washington Lawsuit and related enforcement proceedings was a nightmare. Mr. Bhongir, who is upon information and belief an alleged felon in India, worked with Madhavi Vuppalapati and Satish Vuppalapati (collectively "Vuppalapatis"). The Vuppalapatis are Prithvi executives who orchestrated the fraud against Kyko and are currently hiding from the FBI in India to try to escape likely federal criminal

---

[4] This is simply false. As set forth above, Kyko learned of the fraud in March 2013 and discovered Bhongir's involvement with the fraud in March of 2015 as evidenced by these letters. Accordingly, unless the limitations period is tolled, Kyko's claims would be time-barred under the two years limitations period (Kyko was required to file its Complaint no later than February of 2015 to make its claims timely). Nevertheless, Kyko is entitled to have this interim period tolled.

prosecution regarding their crimes committed against Kyko and others. After the fraud was exposed, the Vuppalaptis destroyed and removed records and otherwise ransacked Prithvi's offices to destroy evidence of the fraud. Madhavi Vuppalapati refused to follow court orders leading to an arrest warrant for contempt of court.[5] **(Exhibit B)**. Guru Pandyar, a co-conspirator in the fraud whom Mr. Bhongir immediately contacted after being served with this Complaint, invoked his 5th Amendment right against self-incrimination at his deposition.[6]  In short, those with detailed knowledge destroyed and concealed evidence and otherwise refused to cooperate with Kyko and the judges involved in the Washington Lawsuit.  This culminated in a trial *in absentia* with not a single defendant appearing for trial because they wanted to conceal the details of the fraud at all costs.  As such, Kyko was left with incomplete and cryptic information regarding the scope of the fraud and those who participated in it; and it literally took years for Kyko to piece the remnants together to identify Mr. Bhongir's involvement with the bogus accounts receivable.

Notwithstanding all of this, Mr. Bhongir has the audacity to argue that Kyko's lack of knowledge of his existence is "disingenuous" because his identity is made available through Prithvi's annual reports which are publically available.  (Bhongir Brf. Pg. 18). Suffice it to say that the fact that Mr. Bhongir appeared in public records is meaningless when Kyko could not have  known to look for him there in the first place because Mr. Bhongir's involvement with the bogus accounts receivable was fraudulently concealed.  Moreover, and stating the obvious, the annual reports do not describe the details of Mr. Bhongir's fraudulent/negligent conduct with regard to the bogus accounts receivable.  Accordingly, this is just another hollow statement

---

[5] This is a public record, and therefore, may be considered in the context of a Rule 12(b)(6) motion.
[6] To try to obtain leniency in a federal criminal prosecution, Mr. Pandyar subsequently entered into an agreement to cooperate with Kyko and provide information regarding the fraud.

designed to divert this Court's attention away from the fact that the statute of limitations period should be tolled.

Although stated in <u>Johnson</u> as hyperbole to illustrate a point, Kyko literally invoked the FBI's assistance to hold all of those accountable who committed the fraud and literally hired a "Sherlock Holmes" of sorts to investigate the Vuppalapatis' activities to try to bring them to justice, which in turn, may compel them to provide the complete details of the fraud.  In the end, Kyko actually embarked on a "Herculean search effort" and sorted through the information it had to piece together Mr. Bhongir's involvement with the bogus accounts receivable. As such, Kyko did everything it could *possibly* do, let alone "reasonably" could do, to locate Mr. Bhongir. Accordingly, 42 Pa.C.S.A. § 5532(b)(3) does not apply thereby entitling Kyko to have its claims tolled under 42 Pa.C.S.A. § 5532(a).  As such, Kyko's claims are timely.

Similarly, Kyko's claims are timely under the different variations of the "discovery rule" under Pennsylvania's common law that toll the running of the statute of limitations.  These will be addressed below *seriatim*.

As stated in <u>Pocono Int'l Raceway Inc. v. Pocono Produce Inc.</u>, 503 Pa. 80, 85 (1983), the "'discovery rule' is [an exception to the running of the statute of limitations period], and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury *or its cause*" (emphasis included in part, added in part).  As forth above, Mr. Bhongir has failed to provide any evidence that demonstrates Kyko failed to exercise due diligence to locate him in the statute of limitations period.  This is not a surprise because none exists.  Kyko did everything *possible* under the circumstances to identify all tortfeasors within the limitations period.  The acts of criminals prevented this from happening.  Accordingly, the discovery rule applies making Kyko's claims timely.

As set forth in <u>Beauty Time Inc. v. Vu Skin Systems Inc.</u>, 118 F.3d 140, 146 (3rd. Cir. 1997) when "the *underlying events being sued upon* ... sound inherently in fraud or deceit ... [that], without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by plaintiffs." <u>Quoting Gee v. CBS Inc.</u>, 471 F.Supp. 600, 622 - 623 (E.D. Pa. 1979) <u>aff'd</u> 612 F.2d 572 (3d Cir.1979). This "is based on the premise that fraud as a common-law cause of action is self-concealing by its nature." <u>Id</u>. Kyko's Complaint states a fraud claim. Kyko did everything *possible* under the circumstances to identify Mr. Bhongir's fraudulent conduct, which is by its nature "self-concealing," within the limitations period but was unable to do so. Accordingly, Kyko's fraud claim is timely.

Kyko's claims are also tolled under the doctrine of "fraudulent concealment" which is defined as follows: "Irrespective of any inherent fraud, the inquiry here is whether there was an affirmative and independent act of concealment that would divert or mislead a plaintiff about the underlying cause of action." <u>Sheet Metal Workers, Local 19 v. 2300 Group Inc.</u>, 949 F.2d 1274, 1280 (3rd. Cir. 1991). As mentioned above, evidence was intentionally destroyed, an arrest warrant was issued for failing to abide by court orders, a witness "pled the 5th," and a trial was held *in absentia* - all of which was orchestrated by people who schemed to conceal the financial crimes perpetrated against Kyko. Kyko did everything *possible* under the circumstances to identify all tortfeasors within the limitations period. The acts of criminals prevented this from happening. Accordingly, Kyko's claims are timely.

**D.    Defendant, Mr. Bhongir, Owes a Legal Duty to Kyko**

Mr. Bhongir attempts to shirk his duties owing to Kyko by stating that he "never had any relationship with Plaintiffs" and that he does not owe a "fiduciary duty" to Kyko (Bhongir's Brf. Pgs. 20-22). Each of these arguments are addressed *seriatim*.

Mr. Bhongir's reliance on case law only addressing fiduciary duties is plain legal error. As set forth below, a fiduciary duty is not necessary nor the exclusive means by which Mr. Bhongir could owe a duty to Kyko. Accordingly, this argument should be summarily dismissed.

A plaintiff must establish a duty owed by a defendant in order to sustain a cause of action for negligence. R.W. and C.W. v. Manzek, 585 Pa. 335, 347 (2005). "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." Althaus v. Cohen, 562 Pa. 547, 553 (2000).

1.     **Althaus** Factors (1) and (3)

Given the facts of this case, and applicable case law discussed below, there is overlap between Althaus factors (1) and (3). Therefore, they will be addressed together.

Mr. Bhongir's "battle cry" throughout his Motion to Dismiss is that he cannot have any liability because he never had any relationship with Kyko. This is legally false. As stated in Roche v. Ugly Duckling Car Sales Inc., 879 A.2d 785, 789 (Pa. Super. Ct. 2005):

> Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time. ***790** Zanine v. Gallagher, 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985). **Where the parties are strangers to each other**, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. *Id.* The scope of this duty is limited, however, to those risks which are **reasonably foreseeable** by the actor in the circumstances of the case. *Id.*
>
> **Only** when the question of foreseeability is **undeniably clear** may a court rule as a matter of law that a particular defendant **did not** have a duty to a particular plaintiff. *Migyanko v.*

*Thistlethwaite,* 275 Pa.Super. 500, 419 A.2d 12, 14 (1980); *see also Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928).

(emphasis added)

The "forseeability" inquiry is concerned only with a defendant's conduct that causes a risk of harm, not the manner in which the harm manifests. As stated in <u>Roche</u> 879 A.2d at 793, "[i]f the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, **it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate**"(emphasis added)(citations omitted). <u>See Also</u> <u>Huddleston v. Infertility Center of America Inc.</u>, 700 A.2d 453, 460 (Pa. Super. Ct. 1997) ("[I]n the context of duty, '[t]he concept of foreseeability means the likelihood of the occurrence of a *general* type of risk **rather than the likelihood of the occurrence of the precise chain of events leading to the injury**.' ... "Although it is true that a defendant is not required to guard against every possible risk, he must take reasonable steps to guard against hazards which are generally foreseeable")(citations omitted)(italicized emphasis included; bold emphasis added).

For purposes of this Motion, the Court must accept as true that Mr. Bhongir was a member of Prithvi's audit and remuneration committees who was involved with the bogus accounts receivable; and that Mr. Bhongir knew that, after his departure, the bogus accounts receivable would be transmitted to lenders such as Kyko to induce them to issue loans. Accordingly, Mr. Bhongir knew that transmission of the bogus accounts receivable would place unknown "strangers" at risk of harm. Therefore, as set forth in <u>Roche</u>, Mr. Bhongir owed a duty to Kyko as a matter of law.

The fact that Prithvi transmitted the bogus accounts receivable to Kyko after Mr. Bhongir walked away from Prithvi is meaningless. As set forth in <u>Roche</u> and <u>Huddleston</u>, the

foreseeability inquiry is only concerned with the defendant's conduct that causes a risk of harm (creation/dissemination of bogus accounts receivable that will be relied upon by others), not the manner in which the harm manifests (Prithvi's transmittal of the bogus accounts receivable to Kyko and Kyko's reliance on same after Mr. Bhongir walks away from Prithvi). Thus, although Mr. Bhongir may not have "heard of" Kyko before March of 2015 (Bhongir Brf. Pg. 2), "it is *immaterial* to [Mr. Bhongir's] liability that the harm is brought about in a manner which no one in his position could *possibly have been expected to foresee or anticipate*." Quoting Roche 879 A.2d at 793 (emphasis added).

For the reasons set forth above, Althaus factors (1) and (3) demonstrate that Mr. Bhongir owes a duty to Kyko.

### 2. **Althaus Factors (2), (4), and (5)**

There simply is no social utility of Mr. Bhongir's conduct under Althaus factor (2). Mr. Bhongir was involved in the creation/dissemination of bogus accounts receivable he knew would be transmitted to lenders such as Kyko.

Mr. Bhongir should suffer a consequence under Althaus factor (4). With arrogance, Mr. Bhongir has taken the position that he can literally walk away from his liability regarding his involvement with the bogus accounts receivable just because he left Prithiv before Prithvi transmitted the bogus accounts receivable to Kyko.

Finally, there is a public interest under Althaus factor (5). Individuals should not, as a matter of public policy, be able to escape the harm that they cause by the mere fact that they walk away from their jobs before the harm they caused is suffered by another.

For the reasons set forth above, Althaus Factors (2), (4), and (5) demonstrate that Mr. Bhongir owes a duty to Kyko. Accordingly, and as discussed in the previous section, all of the

<u>Althaus</u> Factors are satisfied which demonstrate Mr. Bhongir owes a duty to Kyko as a matter of law.

**E.       Kyko Has Pled Its Fraud Claim With Particularity**

In a last-ditch effort to try to avoid liability, Mr. Bhongir argues that Kyko has not pled its fraud claim against him with particularity. (Bhongir Brf. Pgs. 21-22). Rule 9(b) states in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   However, as set forth in <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1418 (3rd. Cir. 1997)(citation omitted):

> **"[C]ourts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.' ... Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control** ... But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice ... Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.

(emphasis added)

A plain reading of Paragraphs 12-39 of the Complaint clearly demonstrates that Kyko asserts Mr. Bhongir was on Prithvi's audit committee and remuneration committee from 2005-2009 who was directly involved with the bogus accounts receivable; that he knew that these accounts receivable would be transmitted to lenders such as Kyko after he left Prithvi; that after he left Prithvi, Prithvi transmitted the bogus accounts receivable to Kyko to induce Kyko to enter into the loan factoring agreement; that Kyko relied upon the bogus accounts receivable to enter into the loan factoring agreement; and that upon learning the accounts receivable were bogus, Kyko filed the Washington Lawsuit in 2013.   Accordingly, the Complaint sets forth a fraud claim with particularity.

Nevertheless, Mr. Bhongir attaches the Washington Lawsuit as an exhibit to his Motion to Dismiss and uses it to argue, among other things, the fraud alleged in this case with respect to

the bogus accounts receivable is based upon the same fraud alleged in the Washington Lawsuit. (Bhongir Brf. Pgs. 5-6). As Mr. Bhongir states: "Plaintiffs acknowledge that they are suing Mr. Bhongir for the same injury underlying the Washington Lawsuit." (Bhongir Brf. Pg. 16 citing Paragraphs 28-32 of Complaint). Thus, Mr. Bhongir's argument that the allegations in this Complaint lack particularity simply defies comprehension.

At its core, Mr. Bhongir's complaint centers on the alternative statements made in Paragraph 17 of the Complaint (Mr. Bhongir "created, or assisted in the creation of, the Fraudulent Documents") and Paragraph 18 of the Complaint ("Alternatively, [Mr. Bhongir] did not create, or assist in the creation of, the Fraudulent documents but knew of their existence and allowed them to be disseminated to third-parties with knowledge of their falsity"). According to Mr. Bhongir, this demonstrates how Kyko "fails to set forth the precision or substantiation that is required to state a claim for fraud." (Bhongir. Brf. Pg. 22).

As an initial matter, Rule 8(d)(2) expressly permits Kyko to plead its claims in the alternative: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Moreover Rule 8(d)(3) states: "A party may state as many separate claims or defenses as it has, regardless of consistency." Thus, although Mr. Bhongir may not like the application of these rules to his defense, the fact that Kyko pleads alternative factual statements and theories does not mean its fraud claims fails due to lack of specificity as a matter of law.

Mr. Bhongir's argument is simply a thinly veiled attempt to seize upon the fact that his involvement with the bogus accounts receivable was fraudulently concealed by people who destroyed evidence and fled the country, refused to abide by Court orders leading to an arrest

warrant, "pled the 5th" during deposition questioning, and allowed a trial verdict to be entered against them *in absentia* for fear of having to disclose the complete details of the fraud. Accordingly, and although Kyko has pled its fraud claim with particularity as set forth above, **the application of Rule 9(b) should nevertheless be "relaxed"** as set forth in <u>Burlington Coat Factory</u> because Mr. Bhongir and his colleagues are "sophisticated defrauders" and "the factual information [of the fraud] is peculiarly within [Mr. Bhongir's] knowledge or control." As such, a plain reading of the Complaint demonstrates Kyko has pled its fraud claim with particularity.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, this Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

*/s/ Matthew Junker*
Pa. I.D. No. 312356

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139

(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
mjunker@fowkesrodkey.com

*Counsel for Plaintiffs,*
*Kyko Global, Inc.*
*Kyko Global GmbH*

Dated:  May 17, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF Notification System on this 17th day of May, 2017 upon the following:

Marta A. Stein, Esq.
McGuire Woods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
mstein@mcguirewoods.com

Laura A. Lange, Esq.
McGuire Woods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222
llange@mcguirewoods.com

*/s/ Matthew Junker*