IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYKO GLOBAL, INC., <u>et al.</u>, | : | |
|     Plaintiffs | : | No. 2:17-cv-00212 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| OMKAR BHONGIR, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court are Defendant Omkar Bhongir ("Defendant")'s motion to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 12), and Plaintiffs Kyko Global Inc. and Kyko Global GmbH (collectively referred to herein as "Kyko")'s motion for leave to conduct jurisdictional discovery (Doc. No. 37). For the reasons that follow, the Court will deny Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) without prejudice and grant Kyko's motion for leave to conduct jurisdictional discovery.

## I.  BACKGROUND[1]

### A.  Factual Background

Kyko initiated the above-captioned action against Defendant on February 14, 2017 by filing a complaint in this Court.[2] (Doc. No. 1.) Kyko Global, Inc. is a Canadian corporation that has a principal place of business in Ontario, Canada (id. ¶ 1), while Kyko Global GmbH is a Bahamian corporation with its principal place of business in the Bahamas (id. ¶ 2). Defendant "currently resides in California." (Id. ¶ 7.)

---

[1] The relevant facts are taken from Kyko's complaint. (Doc. No. 1.) The Court limits its discussion of the factual background of this case only to those factual allegations relevant for purposes of deciding the motions presently before the Court.
[2] This action was previously assigned to the Honorable David S. Cercone, and was reassigned to the undersigned on September 26, 2017. (Doc. No. 46.)

1

The allegations in the complaint stem from Defendant's former professional involvement with Prithvi Information Solutions Ltd. ("Prithvi"), which is not a party to this action. (Id. ¶¶ 3-4.) Prithvi, an information technology services company publicly traded on the Indian stock exchange, "is an Indian corporation registered to do business in Pittsburgh, Pennsylvania." (Id. ¶¶ 3, 14.) Kyko alleges that Defendant "was formerly a director of Prithvi and member of its audit committee and remuneration committee." (Id. ¶ 4). Kyko "provides accounts receivable factoring services" (id. ¶ 13), and the complaint indicates that Kyko dealt with Prithvi in the context of factoring service agreements.

According to the complaint, Defendant "engaged in fraudulent and negligent activities in Pittsburgh, Pennsylvania while serving as a director of Prithvi and member of its audit committee and remuneration committee." (Id. ¶ 5.) Alternatively, the complaint asserts that Defendant "engaged in fraudulent and negligent activities while [affiliated with] Prithvi . . . outside of Pittsburgh, Pennsylvania but directed his actions to Pittsburgh, Pennsylvania." (Id. ¶ 6.) Kyko alleges that from approximately 2005 to 2009, Defendant was a director of Prithvi and member of its audit and remuneration committees, and that Defendant "had knowledge of, among other things, Prithvi's customers and accounts receivable." (Id. ¶ 15.) During this time, Prithvi allegedly "created false customers and phony accounts receivables on Prithvi's books and records." (Id. ¶ 16.) According to Kyko, Defendant "created, or assisted in the creation of" such documents.[3] (Id. ¶ 17.)

Kyko further avers that the documents "were transmitted publically to induce investors to invest in Prithvi" (id. ¶ 19), and that Prithvi provided the fraudulent documents "to commercial

---

[3] "Alternatively, [Defendant] did not create, or assist in the creation of" the documents, "but knew of their existence and allowed them to be disseminated to third-parties with knowledge of their falsity." (Doc. No. 1 ¶ 18.)

lenders to induce them to loan money to Prithvi" (id. ¶ 20). Defendant allegedly "failed to take any action to have Prithvi withdraw" the documents after they had been provided to third parties, and was aware that such fraudulent documents would be given to third parties. (Id. ¶¶ 21-22.)

Kyko states that after Defendant "ceased being a director of Prithvi" and a committee member, Prithvi transmitted the documents "to Kyko to try to induce Kyko to enter into a factoring agreement." (Id. ¶ 24.) Upon receiving the documents from Prithvi, Kyko reviewed them "to determine Prithvi's eligibility to receive a loan." (Id. ¶ 25.) Following its review of the documents, under a belief that the documents were in fact legitimate, "Kyko entered into an accounts receivable factoring agreement with Prithvi" (id. ¶ 26), under which "Kyko failed to receive the required payments" pursuant to the agreement (id. ¶ 27).

After Kyko subsequently learned that the documents provided by Prithvi "were actually fraudulent," Kyko initiated a lawsuit against Prithvi and additional parties in the United States District Court for the Western District of Washington (the "Washington Lawsuit"), in which the district court entered a judgment totaling $100,738,980.00 against Prithvi and others "based on fraud and civil racketeering." (Id. ¶¶ 28-30.) According to Kyko, "[d]uring the course of the Washington Lawsuit, Kyko discovered [Defendant's] involvement" with the fraudulent documents, yet Defendant "was not made a party to the Washington Lawsuit because, among other things, the Washington court lacked personal jurisdiction over [Defendant]." (Id. ¶¶ 31-32.)

**B.    Procedural Background**

On February 14, 1017, Kyko initiated the above-captioned action against Defendant by filing a complaint in this Court. (Doc. No. 1.) The complaint sets forth a claim for fraud (Count I) and negligence (Count 2) on the part of Defendant (id. at 4), and requests that the Court enter a

money judgment against Defendant (id. at 5). On April 17, 2017, Defendant filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) (Doc. No. 12), along with a brief in support (Doc. No. 13). Kyko filed a brief in opposition to Defendant's motion on May 17, 2017 (Doc. No. 23), and Defendant filed a reply brief on May 31, 2017 (Doc. No. 36). Accordingly, Defendant's motion to dismiss is fully briefed and thus ripe for disposition.

Also before the Court is Kyko's motion for leave to conduct jurisdictional discovery as to Defendant (Doc. No. 37), which was filed on June 2, 2017, and accompanied by a brief in support (Doc. No. 38). On June 16, 2017, Kyko filed a brief in opposition to the motion (Doc. No. 41), to which Defendant did not file a reply brief. Kyko's motion for leave to conduct jurisdictional discovery is thus ripe for disposition as well.

Because the Court will deny without prejudice Defendant's motion to dismiss (Doc. No. 12), and grant Kyko's motion for leave to conduct jurisdictional discovery (Doc. No. 37), the Court will address only the motion to dismiss on the basis of Rule 12(b)(2) and the issue of jurisdictional discovery, and the Court will deny as moot the pending motion to stay and motions to strike.[4]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. Pro. 12(b)(2). Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a

---

[4] Because the Court will deny without prejudice Defendant's motion to dismiss (Doc. No. 12) and grant Kyko's motion for leave to conduct jurisdictional discovery (Doc. No. 37), the following motions will be denied as moot: (1) Defendant's motion to stay the action pending disposition of the motion to dismiss (Doc. No. 15); (2) Defendant's motion to strike a declaration submitted by Kyko in opposing the motion to stay (Doc. No. 20); and (3) Kyko's motion to strike Defendant's declaration submitted in support of his motion to dismiss (Doc. No. 31).

preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). At the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146. Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. See Metcalfe, 566 F.3d at 330; Connell v. CIMC Intermodal Equip., No. 1:16-cv-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

## III. DISCUSSION

### A. Arguments of the Parties

#### 1. Personal Jurisdiction

In support of his motion to dismiss pursuant to Rule 12(b)(2), Defendant argues that he is subject to neither general nor specific jurisdiction in Pennsylvania. (Doc. No. 13 at 8-9.) First, Defendant asserts that he does not have the requisite continuous or systematic contacts with Pennsylvania in order to establish general jurisdiction, as he "has no connection to Pennsylvania," resides and is employed in California, "does not own any property in Pennsylvania [and] does not conduct any business in Pennsylvania," and has visited Pittsburgh, Pennsylvania only "twice in his life, for a wedding and a few days during a family trip." (Id. at 9.) Second, Defendant maintains that Pennsylvania does not have specific jurisdiction over him, as he "has not directed any activities" toward Pennsylvania, in that he lived in and worked in California "during his tenure as an independent board member" of Prithvi, "attended board meetings . . . in India via telephone from California or in person in India," and "had no role in the

5

operations of Prithvi and no financial interest in the company." (Id.) Further, according to Defendant, Kyko's "claims do not arise out of any conduct" on Defendant's part, "let alone any activities purportedly directed at the forum." (Id. at 10.) Lastly, Defendant cites the fiduciary shield doctrine for the proposition that Kyko cannot attempt to establish the existence of personal jurisdiction over Defendant in Pennsylvania on the basis of his status as a board member of Prithvi.[5] (Id. at 11.)

In opposing Defendant's motion to dismiss on the basis of Rule 12(b)(2), Kyko argues primarily that it is entitled to jurisdictional discovery prior to any ruling on the merits of Defendant's Rule 12(b)(2) defense. (Doc. No. 23 at 2-9.) Accordingly, the Court proceeds to address the parties' arguments as to jurisdictional discovery.

### 2. Jurisdictional Discovery

In response to Kyko's motion for leave to conduct jurisdictional discovery (Doc. No. 37), Defendant asserts that Kyko ultimately has "not pled or met the standard for jurisdictional discovery" (Doc. No. 41). According to Defendant, Kyko has not made the requisite showing that such discovery is warranted because: (1) its allegations against Defendant are frivolous for purposes of the relevant jurisdictional discovery analysis (id. at 3); (2) Kyko has not alleged jurisdictional facts with reasonable particularity, as is required for jurisdictional discovery (id. at 4); (3) permitting such discovery would be improper because this case involves an individual rather than a corporate defendant (id. at 6); and (4) Kyko cannot "rely upon contacts of other individuals or entities with Pennsylvania in order to establish jurisdiction over [Defendant] under an 'absent co-conspirator' theory" (id. at 9).

---

[5] According to Defendant, "[a]s a general rule, individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." (Doc. No. 13 at 11) (citing Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992)).

6

Conversely, Kyko argues that its complaint demonstrates the need for jurisdictional discovery because "[t]he [c]omplaint, which this Court must accept as true when initially reviewing a 12(b)(2) motion, states that Prithvi is an Indian corporation registered to do business in Pittsburgh, Pennsylvania," and that Defendant "was formerly a director of Prithvi and member of its audit and remuneration committee" who "acted fraudulently, or negligently, with respect to the creation of bogus accounts receivable that were used to induce lenders such as Kyko to enter loan agreements." (Doc. No. 23 at 5.) Further, Kyko points to its allegation that Defendant engaged in such activities "while physically located in Pittsburgh, Pennsylvania or performed these activities outside Pittsburgh . . . but directed his activities to Pittsburgh." (Id. at 6.) According to Kyko, the complaint "demonstrates that [Defendant] committed fraudulent and negligent activities in Pittsburgh and/or directed his activities to Pittsburgh." (Id.)

In addition, Kyko points to the declaration of Kiran Kulkarni (Doc. No. 17-4),[6] the director and CEO of Kyko, which Kyko claims "contradicts [Defendant's] declaration and states that [Defendant] was a member of Prithvi's audit committee" (Doc. No. 23 at 6). Kyko indicates that this declaration evidences Defendant's attempt "to distance himself from having any role regarding [the fraudulent documents]" by stating that he had less involvement with Prithvi than Kyko alleges. (Id.) Further, Kyko cites the Kulkarni declaration for the proposition that Defendant used email accounts associated with Prithvi during his tenure with the company, stating that it thus "defies comprehension how [Defendant] could not have sent numerous emails from California to Pittsburgh to execute his duties." (Id. at 6-7.)

---

[6] Kyko initially submitted this declaration as an exhibit to its brief in opposition to Defendant's motion to stay (Doc. No. 17-4), and Defendant has moved to strike this declaration (Doc. No. 20). However, as explained more fully below, the Court declines to resolve the merits of the motion to strike due to its conclusion that Kyko has met its burden in demonstrating that jurisdictional discovery is warranted, and will deny the motion to strike as moot.

7

Kyko also disputes Defendant's argument as to the propriety of jurisdictional discovery in cases involving an individual defendant, rather than a corporate defendant. Specifically, Kyko argues that regardless of the fact that Defendant is an individual, there remains a presumption in favor of jurisdictional discovery. (Doc. No. 38 at 2-3.) Further, Kyko cites various district court opinions that it claims demonstrate that jurisdictional discovery is appropriate in instances when a defendant is alleged to have communicated with others located in the forum state through means such as email, telephone conversations, or regular mail. (Id. at 4-5.) Kyko also states that Pennsylvania law recognizes "absent co-conspirator" or "conspiracy theory" jurisdiction, pursuant to which a court "may assert personal jurisdiction over co-conspirator defendants when the plaintiff demonstrates that 'substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that [a] non-forum co-conspirator was aware or should have been aware of those acts." (Id. at 6) (alteration in original) (quoting Advanced Fluid Sys., Inc. v. Huber, 2014 WL 1808652, No. 1:13-cv-3087, at *12 (M.D. Pa. May 7, 2014)). Thus, according to Kyko, its allegations that Defendant was a member of certain Prithvi committees and was involved in the production of fraudulent documents, which prompted Kyko to initiate the Washington lawsuit as to other involved parties, is sufficient to establish jurisdiction over Defendant in Pennsylvania under the aforementioned theory of personal jurisdiction. (Id. at 6-7.)

**B.  Whether the Court Has Personal Jurisdiction over Defendant**

Under the applicable analysis for personal jurisdiction, it is presently unclear whether personal jurisdiction exists over Defendant in Pennsylvania.[7] As an initial matter, the Court

---

[7] As noted supra, because this Court sits within the state of Pennsylvania, the Court's personal jurisdiction analysis is concerned with the extent to which personal jurisdiction may be exercised over Defendant according to the laws of Pennsylvania. See Carteret Sav. Bank, 954 F.2d at 144. The exercise of personal jurisdiction in this case is thus governed by Pennsylvania's long-arm statute, which permits the exercise of personal jurisdiction "to the fullest extent allowed under

notes that for purposes of its Rule 12(b)(2) analysis, it is not concerned with the existence of general jurisdiction, as it is clear that Kyko has not shown, nor does it allege, that Defendant possesses "continuous and systematic" contacts with Pennsylvania so as to render him subject to jurisdiction in Pennsylvania generally. See, e.g., O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). Therefore, because general jurisdiction is not applicable, the Court considers only whether specific jurisdiction exists over Defendant in Pennsylvania. See id. (stating that because general jurisdiction did not exist in forum, court would "consider only the specific variety").

The United States Court of Appeals for the Third Circuit has articulated a three-part analysis for examining whether personal jurisdiction exists over a defendant: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met," the Court must determine "whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. at 317 (alterations in original) (citations omitted). In this case, Kyko's complaint alleges that Defendant was involved with Prithvi, an Indian corporation registered to do business in Pittsburgh, Pennsylvania, as a director and possibly a committee member, and that while he was professionally involved with Prithvi, he "engaged in fraudulent and negligent activities in Pittsburgh." (Doc. No. 1 ¶¶ 3, 5.) The complaint also alleges that, alternatively, Defendant engaged in such activities "outside of Pittsburgh" yet directed his actions toward Pittsburgh." (Id. ¶ 6.) Such assertions, alone, are insufficient to demonstrate that this Court could exercise personal jurisdiction over Defendant. Indeed, although the complaint

---

the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Accordingly, the Court's analysis "is constrained only by the Due Process Clause of the United States Constitution." See Int'l Shoe, 326 U.S. at 316.

9

alleges that Defendant directed his activities toward Pennsylvania, it lacks necessary supporting information that would describe how Defendant allegedly directed the subject activities to this forum.

However, "when the [C]ourt does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Here, it is clear that a factual dispute exists as to Defendant's level of involvement with Prithvi and its operations involving Pittsburgh, which is highlighted by the parties' competing declarations that are the subject of separate motions to strike pending before this Court.[8] (Doc. Nos. 13-1, 17-4.) The Court need not resolve the parties' respective motions to strike, though, because at this juncture, the Court concludes that jurisdictional discovery is warranted regardless of the merits of those motions.

### C. Whether the Court Should Permit Jurisdictional Discovery

"A plaintiff who fails to establish a prima facie case of personal jurisdiction may request a period of limited discovery for the purpose of obtaining further jurisdictional evidence." In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 572 (M.D. Pa. 2009). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" Toys "R" Us, Inc. v. Step Two, S.A., 319 F.3d 446, 456 (3d Cir. 2003) (citation omitted) (citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)).

---

[8] The parties' respective motions to strike are located at Docket Numbers 20 and 31.

"If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." Id. (second alteration in original) (citation omitted) (citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.3d 1217, 1223 (3d Cir. 1992)). A jurisdictional claim is "merely frivolous" if, for instance, it consists of "a mere unsupported allegation that the defendant 'transacts business' in an area." Mass. Sch. of Law at Andover, 107 F.3d at 1042. Further, jurisdictional discovery generally pertains "to corporate defendants and the question of whether they are 'doing business' in the state." Id. (citing Compagnie des Bauxites des Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)). Accordingly, when "the defendant is an individual, the presumption in favor of discovery is reduced." (Id.)

In the instant case, the Court concludes that jurisdictional discovery is appropriate as to whether specific jurisdiction exists over Defendant in Pennsylvania. The Court notes that, despite a reduced presumption in favor of jurisdictional discovery in cases involving an individual defendant, district courts have permitted jurisdictional discovery as to non-corporate defendants under certain circumstances. See, e.g., Gilliland v. Hurley, No. 09-cv-1621, 2010 WL 830968, at *3-4 (W.D. Pa. 2010) (permitting jurisdictional discovery because plaintiff's factual allegations suggested possibility of minimum contacts with "reasonable particularity" despite dispute as to jurisdictional facts between parties). Additionally, the Court finds that Kyko's allegations are not "merely frivolous," as Kyko alleges that Defendant was involved with Prithvi, who is registered to conduct business in Pennsylvania, in such a capacity that Defendant would have had knowledge of the accounts receivables forming the basis of Kyko's litigation involving Prithvi. In light of Kyko's allegations, the Court concludes that jurisdictional

discovery regarding Defendant's contacts with Prithvi's operations in Pittsburgh is reasonable, and limited discovery on this issue "would shed light on the extent, if any," Defendant directed his activities at Pittsburgh. See Toys "R" Us, 318 F.3d at 457. Such information "would speak to an essential element of the personal jurisdiction calculus." Id. Further, a determination as to whether to permit jurisdictional discovery is within the discretion of the district court. See, e.g., Doe v. Hesketh, 15 F. Supp. 3d 586, 601 (E.D. Pa. 2014) ("We may permit jurisdictional discovery under certain circumstances and at our discretion."). Therefore, the Court concludes that jurisdictional discovery, limited to the issue of Defendant's contacts with Privthi's Pittsburgh operations for purposes of the potential exercise of specific jurisdiction over Defendant by this Court, is warranted.

**IV.     CONCLUSION**

Based on the foregoing, the Court will deny without prejudice Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 12), and grant Kyko's motion for leave to conduct jurisdictional discovery (Doc. No. 37). An appropriate Order follows.

    s/ Yvette Kane
    Yvette Kane, District Judge
    United States District Court
    Western District of Pennsylvania
    *Sitting by designation*