**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYKO GLOBAL, INC., et al.,** | : | |
| **Plaintiffs** | : | **No. 2:17-cv-00212** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **OMKAR BHONGIR,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant Omkar Bhongir ("Defendant")'s renewed motion to

dismiss (Doc. No. 74), Plaintiffs Kyko Global, Inc. and Kyko Global GmbH's complaint (Doc.

No. 1),[1] pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6);

Defendant's motion to strike (Doc. No. 91); Defendant's motion for attorney's fees (Doc. No.

61); and Plaintiffs' motion to strike Defendant's renewed motion to dismiss as to an

unconstitutionality argument raised therein (Doc. No. 94).  For the reasons stated herein, the

Court will grant Defendant's motion to dismiss and motion for attorney's fees and deny

Defendant's motion to strike and Plaintiffs' motion to strike as moot.

## I.    BACKGROUND

Plaintiffs initiated the above-captioned action by filing a complaint against Defendant in

this Court on February 14, 2017, asserting claims for fraud (Count I) and negligence (Count II),

in connection with Defendant's alleged role in a fraudulent scheme perpetrated by Prithvi

Information Solutions Ltd. ("Prithvi"), of whose board of directors Defendant was previously a

member.  (Doc. No. 1.)  In sum, Plaintiffs allege that Defendant was involved in the creation of

phony accounts receivable in connection with a factoring agreement while he was serving as a

---

[1] When referring to Plaintiffs Kyko Global, Inc. and Kyko Global GmbH together, the Court
refers to them as "Plaintiffs."

director of Prithvi, and that the fraud carried out by Prithvi resulted in significant monetary loss to Plaintiffs.[2]  Defendant filed a motion to dismiss the complaint on April 17, 2017 pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) (Doc. No. 12),[3] which this Court denied without prejudice in a Memorandum and Order dated April 11, 2018 (Doc. Nos. 55, 55-1).  The Court considered Defendant's motion only as to his request for relief based on personal jurisdiction under Rule 12(b)(2), and after concluding that it was unable to ascertain whether it possesses personal jurisdiction over Defendant, granted Plaintiffs' request for jurisdictional discovery and ordered limited jurisdictional discovery as to the nature of Defendant's contacts with Pittsburgh, Pennsylvania, which is located in the Western District of Pennsylvania (Doc. No. 55 at 12).  Specifically, the Court denied Defendant's motion to dismiss without prejudice and permitted Plaintiffs "to conduct jurisdictional discovery, limited to the issue of whether personal jurisdiction exists over Defendant in this [C]ourt[,]" to begin on April 11, 2018 and conclude on July 31, 2018.  (Doc. No. 55-1.)

Following the entry of the aforementioned order permitting jurisdictional discovery as to Defendant, Plaintiffs filed a motion to compel production of documents and Defendant's attendance at a deposition under Federal Rule of Civil Procedure 37(a) and to extend the jurisdictional discovery period pursuant to Federal Rule of Civil Procedure 16(b)(4) on June 12, 2018.  (Doc. No. 56.)  On July 20, 2018, the Court denied Plaintiffs' motion to compel on the basis that Plaintiffs' requests were overly broad, and, in accordance with Rule 37(a)(5)(B), directed Defendant to "submit . . . an itemized statement, including attorney's fees, of the

---

[2] This Court previously recounted the factual background of this action in its Memorandum discussing Defendant's first motion to dismiss.  (Doc. No. 55.)  Accordingly, the Court declines to repeat said factual discussion herein, and, rather, incorporates the factual background discussed in its prior Memorandum herein.

[3] While this motion was pending, the case was reassigned to the undersigned on September 26, 2017.  (Doc. No. 46.)

expenses incurred in opposing Plaintiffs' motion to compel." (Doc. No. 60 at 1.) Additionally, the Court permitted an extension of the jurisdictional discovery period until August 30, 2018 (id. at 2), ordering that no further extensions of the jurisdictional discovery period would be granted and permitting Defendant to "file a renewed motion to dismiss Plaintiffs' complaint within twenty-one (21) days of the conclusion of the jurisdictional discovery period." (Id.) In accordance with the Court's previous order, Defendant filed a motion for attorney's fees on July 25, 2018 (Doc. No. 61), which is currently pending before the Court.

On August 29, 2018 – one day prior to the date on which the jurisdictional discovery period was to expire – Plaintiffs filed a motion to compel a non-party, Sybase Inc. ("Sybase"), to produce documents and attend a deposition pursuant to Federal Rule of Civil Procedure 45. (Doc. No. 67.) In their motion, Plaintiffs stated, inter alia, that: "Defendant had been employed at Sybase for approximately [twenty-five] years"; "Defendant served on [Prithvi's] Board of Directors between 2005-2009"; "Plaintiffs believe that Defendant may have provided consulting services to [Prithvi] after 2009"; and "Sybase was a client of [Prithvi] while Defendant served on [Prithvi's] Board of Directors." (Id. at 1-2.) Plaintiffs further stated that they have alleged "that Defendant was involved in the creation of bogus accounts receivable that [Prithvi] used to induce Plaintiffs to enter into a loan factoring agreement with [Prithvi]." (Id. at 2.) According to Plaintiffs, "Defendant may have used, among other things, Sybase email addresses and its telephone system to undertake activities on behalf of [Prithvi] by directing his communications from the San Francisco, California metropolitan area to Pittsburgh, Pennsylvania where [Prithvi's] U.S. operations are headquartered" (id. ¶ 9), and, therefore, Plaintiffs "sent Sybase a subpoena to produce documents and have a corporate designee appear to give deposition testimony" (id. ¶ 12). Plaintiffs filed the motion to compel after Sybase "objected to the

[s]ubpoena and did not produce any documents" and a corporate designee did not appear for purposes of said deposition. (Id. ¶ 13.) While that motion was pending, Defendant filed the instant renewed motion to dismiss Plaintiffs' complaint on September 20, 2018 (Doc. No. 74), along with a brief in support thereof (Doc. No. 75).

On October 2, 2018, the Court issued an Order granting in part and denying in part Plaintiffs' motion to compel production and attendance at a deposition by Sybase. (Doc. No. 78.) Specifically, the Court denied Plaintiffs' request to depose Sybase's corporate designee in Oakmont, Pennsylvania as improper under Rule 45 and granted Plaintiffs' request to depose the designee via remote means, while denying certain requests by Plaintiffs for production of documents "as overly broad for purposes of the limited jurisdictional discovery previously authorized by the Court." (Id. at 1.) As it relates to Plaintiffs' remaining requests for production, the Court granted those requests "only insofar as the requests are limited to the years 2005-2009 and specifically pertain to Defendant's activities as a board member of Prithvi Information Solutions Ltd." (Id.) Further, the Court denied Plaintiffs' request for an Order directing Sybase "to produce documents in accordance with the search terms contained in Exhibit G" accompanying their motion to compel. (Id.) Lastly, the Order stated that due to the Court's disposition of the motion to compel therein, "any brief in opposition to Defendant's renewed motion to dismiss (Doc. No. 74), shall be filed within fourteen (14) days of Plaintiffs' receipt of the aforementioned discovery material from Sybase in accordance with this Order." (Id. at 2.)

On March 13, 2019, Plaintiffs filed their brief in opposition to Defendant's renewed motion to dismiss (Doc. No. 87), to which Defendant filed a brief in reply on March 27, 2019

(Doc. No. 93).[4]  Having been fully briefed, therefore, Defendant's motion to dismiss is ripe for disposition.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction.  See Fed. R. Civ. Pro. 12(b)(2).  Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  At the pleading stage, a plaintiff is required only to establish a prima facie case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor.  See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Carteret Sav. Bank, 954 F.2d at 146.  Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction.  See Metcalfe, 566 F.3d at 330; Connell v. CIMC Intermodal Equip., No. 1:16-cv-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

"The two types of jurisdiction are general jurisdiction and specific jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)).  "If the plaintiff's

---

[4] On March 27, 2019, Defendant also filed a motion to strike certain declarations (Doc. No. 91), submitted by Plaintiffs in connection with their brief in opposition to Defendant's renewed motion to dismiss (Doc. 87), along with a brief in support of the motion to strike (Doc. No. 92). Although the motion to strike is, as of this date, not fully briefed, because the disposition of the motion to strike is unnecessary to the Court's resolution of the motion to dismiss, as explained more fully infra, the Court will deny the motion to strike as moot.  Similarly, while Plaintiffs' motion to strike a portion of Defendant's motion to dismiss (Doc. No. 94), which was filed on April 3, 2019, is not fully briefed, because the Court will grant Plaintiff's motion to dismiss for lack of jurisdiction, Plaintiffs' motion to strike will be denied as moot.

claim does not arise out of the defendant's contacts with the forum, the [C]ourt is said to exercise 'general jurisdiction.'" IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 n.2 (3d Cir. 1998) (quoting Helicopteros, 466 U.S. at 414 & n.9). "To establish general jurisdiction over a defendant, the contacts must be shown to be 'continuous and systematic.'" Id. (quoting Helicopteros, 466 U.S. at 416). In contrast, a court exercises specific jurisdiction over a defendant "[w]here . . . the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." See id. at 259 (citing Helicopteros, 466 U.S. at 408, 414 n.8). A court's determination as to whether the exercise of specific jurisdiction is proper entails a three-part inquiry: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'" See O'Connor, 496 F.3d at 317 (alterations in original) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 472, 476 (1985); Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)). When a plaintiff asserts multiple claims of different types, a court's personal jurisdiction analysis may be claim-specific. See Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001) (remarking that while conducting a claim-specific analysis may not be required in every case, such an analysis may be appropriate, for example, due to "different considerations in analyzing jurisdiction over contract claims and over certain tort claims").

Where a plaintiff asserts an intentional tort claim and a Defendant raises the issue of personal jurisdiction, courts within this circuit apply the Calder "effects test," which requires the plaintiff to establish the following:

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 258 (quoting IMO Indus., 155 F.3d at 265-66).  This test requires "that the tortious actions of the defendant have a forum-directed purpose."  See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99 (3d Cir. 2004).  When analyzing the existence of personal jurisdiction over a defendant for purposes of a negligence claim, however, courts employ "the traditional specific jurisdiction analysis [that] simply requires that the plaintiff's claims 'arise out of or relate to' the defendant's forum contacts."  See id. at 99 (citing Burger King, 471 U.S. at 472).

## III.    DISCUSSION

Because the Court concludes herein that it lacks personal jurisdiction over Defendant, it addresses Defendant's motion to dismiss only as to Federal Rule of Civil Procedure 12(b)(2) and does not examine Defendant's other asserted bases for relief regarding improper venue under Rule 12(b)(3) and Plaintiffs' failure to state a claim upon which relief may be granted under Rule 12(b)(6).  (Doc. No. 74.)  In addition, because the issue of general jurisdiction over Defendant is not present in this case, the Court's examines only whether there is specific personal jurisdiction over Defendant.[5]

### A.    Arguments of the Parties

#### 1.    Defendant's Arguments in Favor of Dismissal

---

[5] In its Memorandum addressing Defendant's first motion to dismiss, the Court stated that "for purposes of its Rule 12(b)(2) analysis, it is not concerned with the existence of general jurisdiction, as it is clear that [Plaintiffs have] not shown, nor [do they] allege, that Defendant possesses 'continues and systematic' contacts with Pennsylvania so as to render him subject to jurisdiction in Pennsylvania generally."  (Doc. No. 55 at 9) (citing O'Connor, 496 F.3d at 317). The Court renews this conclusion herein and, therefore, addresses only the issue of specific personal jurisdiction.

In support of his motion, Defendant argues primarily that: (1) he lacks minimum contacts necessary to establish jurisdiction in Pennsylvania; (2) the claims at issue "do not arise out of or relate to any forum-related conduct" on his part; (3) the Court's exercise of jurisdiction over him in this case "would offend 'traditional notions of fair play and substantial justice'"; and (4) the exercise of jurisdiction over him is precluded by operation of the fiduciary shield doctrine in light of Defendant's former role as a board member of Prithvi.  (Doc. No. 75 at 10-15.)  As to his first basis for dismissal, Defendant notes that one's relationship with a third party, alone, is not enough to render the exercise of jurisdiction proper (id. at 10) (citing Bristol-Meyers Squibb Co. v. Super. Ct. of Cal., __ U.S. __ (2017)), and that Plaintiffs have failed to demonstrate that he, "not third parties associated with Prithvi, has contacts with the forum and that those contacts deliberately targeted the forum." (id. at 11).  Defendant describes his relevant activities as follows: "[h]e served as an independent non-executive board member of an Indian corporation"; "[h]e resided and worked in California during his tenure as an independent non-executive board member"; "[h]e attended board meetings that took place in India via telephone from California or in person in India"; and "[h]e had no role in the operations of Prithvi and no financial interest in the company." (Id. at 11.)  According to Defendant, such contacts do not establish that he is subject to jurisdiction in this Court, for "Plaintiffs have not identified any intentional conduct by Defendant that created contacts with the forum" in that they "appear to be relying on hypothetical telephone calls and emails to individuals who may have been residing in Pittsburgh at the time." (Id. at 12.)

In support of his argument that "Plaintiffs' claims do not arise out of or relate to any forum-directed conduct" on his part, Defendant asserts that "Plaintiffs' claims derive from the fraudulent conduct of Prithvi that occurred in Seattle" and "[t]he facts dictate that the fraud

occurred in Seattle and was directed at Canada[,]" thus demonstrating the absence of any "link to Pittsburgh other than it was where the main [tortfeasor] formerly lived and worked, but even then she had relocated to Seattle prior to any involvement with Plaintiffs." (Id. at 13.) Further, Defendant argues that "[a]ny action or inaction" on his part "as a board member or purported audit committee member would have occurred in California and would have been directed to Prithvi's corporate headquarters in India." (Id. at 14.) With respect to his additional argument that the exercise of jurisdiction over him by this Court would not comport with traditional notions of fair play and substantial justice, Defendant states that he "could not have reasonably anticipated that his short tenure as an independent non-executive board member of an Indian corporation, which ended in 2009, would demand that he be haled into court in Pittsburgh (where he has only been twice in his life) eight years later for an alleged fraudulent scheme committed over two years after he resigned from the position." (Id.)[6]

### 2. Plaintiffs' Arguments Against Dismissal

In opposition, Plaintiffs argue primarily that this Court has personal jurisdiction over Defendant for purposes of both of their claims under the governing legal standards. First,

---

[6] On a related note, Defendant asserts that "Plaintiffs' attempt to hold [him] liable for Prithvi's conduct over two years after he resigned from his role and several years after having fully litigated the case against Prithvi and sixteen other defendants in federal court is transparent – they simply seek anyone in the United States associated with Prithvi to write them a check." (Doc. No. 75 at 15.)

As to his argument regarding the application of the fiduciary shield doctrine, Defendant asserts that the doctrine bars the exercise of jurisdiction over him in Pennsylvania because he "had a limited role as an independent non-executive board member, de minimis contact with Pennsylvania, and a non-existent role in the alleged fraud, evidenced by Plaintiffs' prosecution over five years ago against the primary defendants before dragging [Defendant] into a Pennsylvania lawsuit." (Id. at 16.) As stated by Defendant in his brief, the fiduciary shield doctrine generally mandates that "individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." (Id.) (citing Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992)).

Plaintiffs state that as it pertains to their negligence claim, the exercise of jurisdiction over Defendant by this Court is proper because: (1) "Defendant executed his duties as a Board Member by purposefully directing his activities to Pittsburgh"; (2) "Plaintiffs' claims 'arise out of or relate to' Defendant's activities"; (3) and "[t]he assertion of personal jurisdiction comports with 'fair play and substantial justice.'" (Doc. No. 87 at 10-15.) As to the first point, Plaintiffs point to certain testimony of Defendant, stating that Defendant admitted that Prithvi's U.S. operations were located in Pittsburgh, and that he was aware that Madhavi Vuppalapati ("Ms. Vuppalapati"), one of the primary tortfeasors, was located in Pittsburgh while he was a board member. (Id. at 11.) Further, Plaintiffs refer to Defendant's testimony "that he executed his Board duties by communicating with Ms. Vuppalapati via email, and by telephone by dialing her phone number that had a '412' area code, which corresponds to Pittsburgh[,]" and state that Prithvi's "records show that [it] paid for Defendant to have a Pittsburgh cell phone number." (Id.) Additionally, Plaintiffs state that "Defendant testified that he traveled to [Prithvi's] Pittsburgh office for an office party to celebrate Ms. Vuppalapati's birthday." (Id.) As to communications between Ms. Vuppalapati and Defendant, Plaintiffs also assert that Defendant exchanged emails with her to arrange board meetings and inform her of his intent to resign from the board. (Id. at 11-12.) Plaintiffs also note that Defendant previously sent an email prior to his resignation regarding "issues" faced by Prithvi "from the audit" and that when questioned about such issues, "Defendant testified that a newspaper article had been published that stated [Prithvi's] auditors found evidence that [Prithvi] created fake customers." (Id. at 12.)

Additionally, Plaintiffs refer to the documents produced by Sybase to support its argument that this Court has personal jurisdiction over Defendant. Specifically, Plaintiffs cite email communications between Ms. Vuppalapati and Defendant, noting that Ms. Vuppalapati's

email signature block "contains her Pittsburgh telephone number" and stating that when Defendant requested permission from Sybase to become a board member of Prithvi in June of 2005, he "acknowledged" Prithvi's office in the United States. (Id.) Further, Plaintiffs state that when Ms. Vuppalapati extended Defendant an offer to become a board member, she did so "using her corporate email address with a signature block that contains [her] Pittsburgh telephone number." (Id. at 12-13.)[7] Further, Plaintiffs make reference to an email exchange in September of 2008 between Defendant and an individual named Daarun Ghosh ("Ghosh"), who reportedly "contacted Defendant to inform him of fraud in connection with [Prithvi's] bond offering[,]" maintaining that Ghosh contacted Defendant again in October of that year in an email referring to fraud in connection with the bond offering and "suggested that Defendant resign from [the] [b]oard." (Id. at 13.) According to Plaintiffs, Defendant then discussed this communication with Ms. Vuppalapati, who dismissed Ghosh's comments and described Ghosh as a "disgruntled broker" previously engaged by Prithvi for purposes of the bond offering, and that Defendant expressed concern about Ghosh's allegations to Ms. Vuppalapati by stating that he agreed with her, but if he did not inquire to her regarding this allegation, he "would not be doing [his] job." (Id.)[8]

---

[7] On a similar note, Plaintiffs state that subsequent to becoming a board member, Defendant communicated with Ms. Vuppalapati while she "was located in Pittsburgh" and that their communications pertained to Prithvi's "business affairs including, without limitation, M&A activities." (Doc. No. 87 at 13.) Plaintiffs additionally state that Defendant contacted Prithvi's "personnel in Pittsburgh to conduct business, and specifically to obtain a [non-disclosure-[a]greement that lists Pittsburgh as the business address." (Id.)

[8] Plaintiffs also refer to a declaration from Guru Pandyar, "a former [Prithvi] employee who resided in Pittsburgh and was responsible for managing [Prithvi's] accounts receivable[,]" who stated that "between 2005-2009, Ms. Vuppalapati executed [Prithvi's] U.S. operations in Pittsburgh, not in Washington, and that she was involved with [Prithvi's] accounts receivable." (Id. at 14.)

With regard to their argument that Plaintiffs' claims "arise out of or relate to" Defendant's activities, Plaintiffs assert Defendant "was involved with the Bogus Accounts Receivable, was a member of [Prithvi's] audit committee, and routinely conducted his Board duties by contacting personnel in Pittsburgh." (Id. at 14-15.) Moreover, Plaintiffs state that Defendant has not shown that the exercise of personal jurisdiction over him by this Court as to the negligence claim contradicts traditional notions of "fair play and substantial justice" because in this regard, "Defendant simply repeats his argument that he was not involved with the Bogus Accounts Receivable and that it would be unfair to require Defendant to defend himself in Pittsburgh when he resides in California[,]" which warrants denial of his motion. (Id. at 15.) Ostensibly in further support of this point, Plaintiffs state that "[i]n fact, it makes little sense for Defendant to contest personal jurisdiction because, even if he is successful, he may have to re-litigate in California some of the issues already decided by this Court . . . and continue to litigate this matter at a higher hourly rate" because "San Francisco attorney hourly rates are generally higher than Pittsburgh's." (Id. at 15-16.)

As to Plaintiffs' fraud claim, Plaintiffs assert that the applicable legal standard for personal jurisdiction is satisfied because: (1) "Defendant committed an intentional tort"; (2) "Plaintiffs felt the brunt of the harm in Pittsburgh"; and (3) "Defendant expressly aimed his tortious conduct [toward] Pittsburgh." (Id. at 16-17.) In support of the first point, Plaintiffs note that their complaint alleges that Defendant committed an intentional tort – fraud – and that they "have otherwise presented evidence" supporting this allegation. (Id. at 16.) As to the second argument noted supra, Plaintiffs contend that they "entered into the loan factoring agreement with [Prithvi] based in Pittsburgh . . . and sent a total of $97,249,417 to [Prithvi's] PNC Bank account located in Pittsburgh pursuant to the factoring receivable fraud[,] which resulted in

$33,579,660 in total loss to Plaintiffs." (Id.) Because Prithvi "and others then transferred almost the entire amount received from Plaintiffs out of PNC Bank in Pittsburgh and Plaintiffs have not been able to recover same[,]" according to Plaintiffs, they "felt the brunt of the harm in Pittsburgh and Pittsburgh is the focal point of the harm suffered by Plaintiffs." (Id. at 16-17.) Finally, as to the third argument prong noted above, Plaintiffs refer to previous portions of their briefing to support the contention that "Defendant directed his fraudulent conduct activities toward Pittsburgh." (Id. at 17.)[9]

## B.    Whether this Court has Personal Jurisdiction over Defendant

Upon careful consideration of the record, the parties' arguments, and the applicable law, the Court concludes that it lacks personal jurisdiction over Defendant for purposes of both of Plaintiffs' claims,[10] and, as a result, the Court must dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(2).[11]

---

[9] In addition, Plaintiffs criticize Defendant's argument as to the applicability of the fiduciary shield doctrine, stating that, first, "it is questionable whether this doctrine even exists[,]" and asserting that even if the doctrine is recognized, "Defendant's attempt to hide behind the fiduciary shield doctrine" lacks merit because: (1) "Defendant was a [Prithvi] Board Member and member of the Audit Committee who worked directly with [Prithvi's] senior executives"; (2) "Defendant had extensive contacts with Pittsburgh"; and (3) "Defendant created, or assisted in the creation of, the Bogus Accounts Receivable to induce investors to invest in [Prithvi] and to induce commercial lenders such as Plaintiffs to lend money to [Prithvi][,]" an issue that "goes to the heart of the parties' dispute and cannot be decided pre-merits discovery." (Id. at 18.) Because the Court ultimately concludes herein that it lacks jurisdiction over Defendant under the jurisdictional analyses applicable to both of Plaintiffs' claims, the Court does not resolve any issue as to the applicability of the fiduciary shield doctrine to Defendant.

[10] To the extent Plaintiffs assert that Defendant has waived any Rule 12(b)(2) argument by "seeking affirmative relief from this Court[,]" (Doc. No. 87 at 5), the Court rejects this argument because although Defendant may have filed other motions in this action while either his original motion to dismiss or the instant renewed motion to dismiss was pending, "the mere filing of a motion does not necessarily constitute a waiver of the personal jurisdiction defense." See Ciolli v. Iravani, 625 F. Supp. 2d 276, 290 (E.D. Pa. 2009) (concluding that the defendants' filing of certain motions did not amount to a submission to the court's jurisdiction and explaining that "[t]he Third Circuit has concluded that affirmative relief is implicated where the [C]ourt

13

### 1.     Plaintiffs' Fraud Claim (Count I)

The Court finds that it would be improper to exercise personal jurisdiction over Defendant as to the fraud claim asserted in Count I of the complaint.  As a threshold matter, "Plaintiffs bear the burden to show a prima facie case of personal jurisdiction over [D]efendant[.]"  See In re Nazi Era Cases Against German Defendants Litig., 153 F. App'x 819, 823 (3d Cir. 2005).  Further, because Defendant has raised the defense of lack of personal jurisdiction, Plaintiffs must demonstrate the existence of jurisdiction with "affidavits or other competent evidence that jurisdiction is proper."  See Metcalfe, 566 F.3d at 330 (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)); see also In re Nazi Era Cases, 153 F. App'x at 823 (noting that "[t]he [d]istrict [c]ourt did not conduct an evidentiary hearing, but it did allow jurisdictional discovery" and stating that, accordingly, the court was concerned with whether the plaintiffs had met their burden in establishing the existence of jurisdiction based on competent evidence, "and not merely upon [the] plaintiffs' allegations").  Here, despite having been afforded the opportunity to conduct jurisdictional discovery as to Defendant, Plaintiffs have failed to meet this burden.

As to Plaintiffs' fraud claim, the complaint states that Defendant "knew that the [f]raudulent [d]ocuments were actually false or was reckless by failing to determine whether or not they were actually false"; Defendant made representations "with the intent that the public at large and commercial lenders such as [Plaintiffs] would rely upon it"; and having relied on the documents at issue in "deciding to enter into the Factoring Agreement[,]" Plaintiffs were harmed

---

'considers the merits or quasimerits of a controversy'" (quoting Wyrough & Loser, Inc. v. Pelmore Labs., Inc., 376 F.2d 543, 547 (3d Cir. 1967))).

[11] As noted previously, because the Court concludes that personal jurisdiction over Defendant is lacking and dismissal of the complaint is warranted, the Court need not address Defendant's other asserted bases for dismissal that invoke Rules 12(b)(3) and 12(b)(6).

because they "would not have entered into the Factoring Agreement" had they known that the documents were, in actuality, fraudulent. (Doc. No. 1 ¶¶ 33-39.) Because Plaintiffs have asserted a claim for fraud, which is an intentional tort,[12] the Court examines the propriety of personal jurisdiction for purposes of this claim using the "effects" test enunciated in <u>Calder v. Jones</u>, 465 U.S. 783 (1984), and, therefore, must determine whether the following elements have been satisfied:

> (1) [Defendant] committed an intentional tort;
> (2) [Plaintiffs] felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by [Plaintiffs] as a result of that tort; [and]
> (3) [Defendant] expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

<u>IMO Indus.</u>, 155 F.3d at 265-66 ("To summarize, we believe that the <u>Calder</u> 'effects test' requires the plaintiff to show the following . . . .").

In light of this standard, it is evident that this Court lacks personal jurisdiction over Defendant for purposes of Plaintiffs' fraud claim. Plaintiffs have met the first element by virtue of their assertions regarding Defendant's alleged tortious conduct because, as noted <u>supra</u>, courts have held that this element is met when there is an allegation of an intentional tort claim, such as one for fraud. <u>See, e.g.</u>, <u>Mendelsohn</u>, 885 F. Supp. 2d at 782; <u>see also</u> <u>Vizant Techs., LLC v. Whitchurch</u>, 97 F. Supp. 3d 618, 637 (E.D. Pa. 2015) (concluding that the court had personal jurisdiction over defendants for purposes of fraud claim under "effects test" and noting first that the "plaintiffs have alleged an intentional tort"). Accordingly, the first element of the effects test is satisfied. Turning to the second element – whether Plaintiffs "felt the brunt of the harm" in

---

[12] <u>See, e.g.</u>, <u>Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.</u>, 885 F. Supp. 2d 767, 782 (E.D. Pa. 2012) (stating that the first prong of the "effects test" used for analyzing personal jurisdiction in an intentional tort case was met when the plaintiff "alleg[ed] that [the defendant] committed fraud, an intentional tort" (citing <u>Remick</u>, F.3d at 258)).

Pennsylvania such that this forum is "the focal point" of Plaintiffs' harm – the Court finds that this element is also satisfied in that Plaintiffs assert that upon entering into the loan factoring agreement with Prithvi, Plaintiffs "sent a total of $97,249,417 to [Prithvi's] PNC Bank Account located in Pittsburgh pursuant to the factoring receivable fraud [that] resulted in $33,579,660 in total loss to Plaintiffs." (Doc. No. 87 at 16.) Plaintiffs' monetary loss, therefore, occurred in Pittsburgh for purposes of its claim against Defendant and, therefore, the Court finds that this element is satisfied.

Despite the first two elements of the Calder effects test being met, though, the Court concludes that jurisdiction over Defendant is improper as to the fraud claim because the third element – that Defendant "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity" is not met. Notably, this Court previously permitted jurisdictional discovery as to Defendant's contacts with Pittsburgh in disposing of Defendant's first motion to dismiss, and subsequently permitted Plaintiffs additional time to conduct said discovery, demonstrating that Plaintiffs have been afforded ample opportunity to develop and present evidence to this Court establishing that jurisdiction over Defendant is proper. Despite these opportunities, however, Plaintiffs have directed the Court to evidence of Defendant's contacts with Pittsburgh that may be generously described as sparse.

First, while Plaintiffs have submitted multiple declarations ostensibly to speak to Defendant's alleged involvement in the underlying fraud, none of these declarations adequately demonstrates that Defendant specifically directed fraudulent conduct as this forum. While these declarations may speak to the process through which others learned of Prithvi's fraud (Doc. No. 87-1 at 1-3), or the manner in which Plaintiffs were harmed as a result of the fraud (Doc. No. 89-9 at 3), none of them explains, in a non-conclusory fashion, how Defendant aimed his alleged

tortious conduct at this forum.[13]  Rather, for purposes of this Court's personal jurisdictional

analysis, they appear only to posit that Defendant contacted Ms. Vuppalapati, who was based in

Pittsburgh during the relevant times in question.  See Doc. No. 87-8 at 2-3 (stating that Ms.

Vuppalapati "was involved in managing [Prithvi's] accounts receivable" and that Defendant

contacted her "via telephone on multiple occasions to execute his Board duties while she was

located in Pittsburgh").  While Defendant's relationship with Ms. Vuppalapati may be of import

as to this Court's jurisdictional analysis, it cannot, on its own, render the exercise of personal

jurisdiction over Defendant proper.  See, e.g., Walden v. Fiore, 572 U.S. 277, 286 (2014) ("To be

sure, a defendant's contacts with the forum [s]tate may be intertwined with his transactions or

interactions with the plaintiff or other parties.  But a defendant's relationship with a plaintiff or

third party, standing alone, is an insufficient basis for jurisdiction." (citing Rush v. Savchuk, 444

U.S. 320, 332 (1980))).

    Even considering Plaintiffs' additional evidence submitted in opposition to the motion to

dismiss, Plaintiffs have failed to meet their burden in demonstrating that Defendant expressly

aimed his conduct at this forum so as to render jurisdiction proper under the "effects" test.

Specifically, Plaintiffs point to email communications between Defendant and Ms. Vuppalapati,

as well as email messages between Defendant and another actor in the fraudulent scheme, Satish

Vuppalapati ("Mr. Vuppalapati"), as demonstrative of Defendant's efforts to direct fraudulent

actions toward Pittsburgh.  These exhibits, however, are unavailing for purposes of the relevant

inquiry the Court must employ because they simply do not demonstrate that Defendant directly

---

[13] Defendant filed a motion to strike the declarations of Srivastav, Pandyar[,] and Kulkarni (Doc. No. 91), concurrently with his reply brief as to his renewed motion to dismiss (Doc. No. 93), on March 27, 2019.  Because of the Court's conclusion herein that there is insufficient evidence to establish the existence of personal jurisdiction over Defendant, however, the Court need not address the arguments presented in Defendant's motion to strike and, accordingly, will deny the motion as moot.

aimed his alleged conduct toward the forum. For example, Plaintiffs have submitted a message in which Defendant forwarded an email from Mr. Vuppalapati that included a powerpoint presentation on Prithvi's IPO as an attachment. (Doc. No. 87-2.) While this message may be interpreted as implicating Defendant in Prithvi's fraud generally, it does nothing to demonstrate a sufficient connection to this forum for purposes of Plaintiffs' fraud claim in the instant case. While Plaintiffs also submit miscellaneous email messages between Defendant and Ms. Vuppalapati (Doc. No. 87-8 at 2-8, 12-16), and email exchanges between Defendant and associates of Sybase (id. at 9-11), these messages do not refer to any activities on the part of Defendant with respect to Prithvi's fraud and, therefore, are of no use in establishing that Defendant aimed his tortious conduct at this forum.

Moreover, even the communications that make some reference to the alleged fraud – such as an email sent to Ms. Vuppalapati, Mr. Vuppalapati, and Defendant by a "freelance journalist doing a story on Prithvi" in connection with "the use of Indian IT companies for money laundering" (Doc. No. 87-7 at 2-4) – are insufficient to satisfy the effects test for Plaintiff's fraud claim because they similarly do not demonstrate that Defendant specifically aimed his conduct at this forum. Rather, the crux of Plaintiffs' entire argument as to their ability to satisfy the personal jurisdiction test for their fraud claim appears grounded in the notion that, by virtue of his affiliation with a company having a location in Pittsburgh and communications with individuals, such as Ms. Vuppalapati, who were based in Pittsburgh at the time, Defendant directed his tortious conduct at this forum so as to render him subject to specific jurisdiction here. Such an argument, however, is unsupported by the governing law, and as a result, this

Court cannot exercise jurisdiction over Defendant for purposes of Plaintiffs' fraud claim.[14] Accordingly, the Court will grant Defendant's motion to dismiss as to Count I of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).

### 2. Plaintiffs' Negligence Claim (Count II)

The Court similarly concludes that it lacks personal jurisdiction over Defendant for purposes of Count II of the complaint, which sets forth a negligence claim against Defendant. Through Count II, Plaintiffs allege that Defendant: (1) "had a duty to conduct due diligence and to otherwise undertake all actions necessary to ensure that Prithvi's customers and accounts receivables were accurately reflected on Prithvi's books and records" and (2) "had a duty to ensure that any false information pertaining to Prithvi's customers and accounts receivable would not be disseminated to the public at large and to . . . [Plaintiffs][,]" and that Defendant breached these duties by not "conducting due diligence" and "otherwise undertak[ing] all actions necessary" to ensure that Prithvi's customers and accounts receivable were accurately recorded, and by not taking action "to have Prithvi withdraw the fraudulent documents upon learning that they were disseminated to the public at large and . . . [Plaintiffs]." (Doc. No. 1 ¶¶ 41-45.) Plaintiffs also allege that Defendant's breaches of these duties caused Plaintiffs "to rely upon the Fraudulent Documents to decide to enter into the Factoring Agreement" and that, consequently, Plaintiffs suffered harm in that they would not have entered into the agreement had they been aware of the fraudulent nature of these documents. (Id. ¶¶ 46-47.) Because Count II of

---

[14] The Court notes that, even if it were to examine the propriety of personal jurisdiction using the "traditional" test, rather than the Calder "effects" test, the Court would also conclude that it lacks personal jurisdiction over Defendant for purposes of the fraud claim, for courts have appeared to treat the "traditional" standard as imposing a higher bar for Plaintiffs seeking to demonstrate the presence of personal jurisdiction. See, e.g., Vizant, 97 F. Supp. 3d at 636-37 ("Thus, even if our jurisdiction is lacking pursuant to the traditional analysis, we may exercise personal jurisdiction over defendants with respect to plaintiffs' conversion claim based upon Calder's 'effects test.'").

Plaintiffs' complaint sets forth a negligence claim against Defendant, in order to determine whether there is personal jurisdiction over Defendant as to this claim, the Court must resolve whether Defendant "purposefully directed" his activities at the forum, and whether Plaintiffs' claim "'arise[s] out of or relate[s] to' at least one of those activities."  See O'Connor, 496 F.3d at 317 (quoting Burger King, 471 U.S. at 472; Helicopteros, 466 U.S. at 414).  If those requirements are satisfied, the Court may then "consider whether the exercise of jurisdiction over [Defendant] otherwise 'comport[s] with fair play and substantial justice.'"  See id. (quoting Burger King, 471 U.S. at 476).

Having reviewed the record, the parties' arguments, and the applicable law, the Court concludes that Plaintiffs have not met their burden in showing that this Court has personal jurisdiction over Defendant as to their negligence claim.  Similar to its jurisdictional analysis as to Plaintiffs' fraud claim, the Court finds that under the analysis applicable to the negligence claim, Defendant did not "purposefully direct" his alleged fraudulent conduct toward Pittsburgh.  Because the aforementioned legal standard requires that both elements are satisfied, the exercise of jurisdiction would be improper because Plaintiffs have not met the "purposefully directed" prong of this test.  Moreover, even if this Court were to find that Defendant purposefully directed his activities at the forum and that Plaintiffs' claim arises out of or relates to those activities, it is clear that the exercise of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  See id. (quoting Burger King, 471 U.S. at 476).

It bears noting that, although "[p]hysical entrance into the forum is not required[,]" Defendant must have engaged in "deliberate targeting of the forum."  See id.  In the instant case, this simply did not occur.  Here, Defendant recalls having been to Pittsburgh only twice in his life, visiting the city in 2007 with his family and, during that trip, "visit[ing] Prithvi's

office . . . for Madhavi[] [Vuppalapati's] birthday party during which [he] met with some company personnel," and, in another instance, traveling to Pittsburgh for a wedding. (Doc. No. 75-1 ¶¶ 33-34.) Needless to say, such contacts are insufficient to render the exercise of jurisdiction over Defendant consonant with traditional notions and fair play and substantial justice, given that they are unrelated to Plaintiffs' allegations regarding Defendant's tortious activity in connection with the fraudulent accounts receivable. Moreover, while the Court is mindful of the fact that physical presence in the forum is not always required to establish the existence of personal jurisdiction, the other purported contacts emphasized by Plaintiffs are similarly insufficient to defeat Defendant's motion, as explained previously. In light of Defendant's sparse contacts with the forum, which are, at best, only tenuously related to Plaintiffs' negligence claim, the Court cannot exercise jurisdiction over Defendant so as "to ensure that [D]efendant[] receive[s] due process as required by the Fourteenth Amendment." See Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 201 (3d Cir. 1998). Accordingly, the Court will grant Defendant's motion to dismiss as to Count II of the complaint for lack of personal jurisdiction.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion to dismiss (Doc. No. 74), and motion for attorney's fees (Doc. No. 61),[15] in their entirety, and deny Defendant's and Plaintiff's motions to strike as moot (Doc. Nos. 91, 94). An appropriate Order follows.

---

[15] As noted supra, in disposing of Plaintiff's motion to compel production of documents and Defendant's attendance at a deposition (Doc. No. 56), the Court directed Defendant to submit, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), "an itemized statement, including attorney's fees, of the expenses incurred in opposing Plaintiff's motion to compel" (Doc. No. 60 at 1). Accordingly, having already determined that such an award of attorney's fees is proper under Rule 37, the Court will grant Defendant's motion for attorney's fees. (Doc. No. 61.)